UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
MARVIN OBDULIO QUINTEROS MORAN,

                Petitioner,

      -against-

WILLIAM JOYCE, *Acting New York Field Officer Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security;* PAMELA BONDI, *U.S. Attorney General;* and KRISTI NOEM, *Secretary, U.S. Department of Homeland Security,*

                Defendants.

------------------------------------- x

MEMORANDUM DECISION AND ORDER

25 Civ. 9645 (GBD)

GEORGE B. DANIELS, United States District Judge:

Petitioner Marvin Obdulio Quinteros Moran ("Petitioner") brings a Petition for Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2241, challenging his November 16, 2025, arrest and ongoing detention by officials from the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). *See* Pet., ECF No. 5, at 1. Specifically, Petitioner contends that his arrest and detention are a violation of the Immigration and Nationality Act ("INA") and his constitutional procedural and substantive due process rights under the Fifth Amendment. *Id.* at 12–13. Petitioner seeks immediate release, or, in the alternative, a bond hearing at which the Government bears the burden to justify his continued detention. *Id.* at 14. Petitioner's detention is governed by 8 U.S.C. § 1226(a), which mandates that detainees "receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). Accordingly, the Petition is granted in part. The Government respondents (collectively the "Government") are ordered to provide Petitioner with a bond hearing before an Immigration Judge within seven business days of this Memorandum Decision and Order, in which the Government

will bear the burden of demonstrating a change of circumstances that show Petitioner poses a danger to the community or a flight risk.

## I. FACTUAL BACKGROUND

Petitioner, an asylum seeker originally from Guatemala, entered the United States in July 2013 by crossing the U.S.–Mexico border. Quinteros Moran Decl., ECF No. 13 ¶¶ 2–3. After entering the United States, Petitioner was apprehended by U.S. Border Patrol. So Decl., ECF No. 10 ¶ 6. Because Petitioner did not possess a valid entry document, U.S. Border Patrol deemed him inadmissible pursuant to 8 U.S.C. § 1225(b)(1) and placed him in expedited removal proceedings. *See* Notice and Order of Expedited Removal, ECF No. 8-2, at 1.

After he was apprehended, Petitioner informed U.S. Border Patrol agents that he fled Guatemala because he feared for his life after being targeted by a local gang. *See* Quinteros Moran Decl. ¶ 3. On July 17, 2013, Petitioner received a credible fear interview from an immigration official, and the immigration official subsequently determined that Petitioner had established a credible fear. So Decl. ¶ 7.

On July 23, 2013, DHS served on Petitioner a Notice of Custody Determination. ECF No. 8-3. This notice stated that "[p]ursuant to the authority contained in [8 U.S.C. § 1226] and part 236 of title 8, Code of Federal Regulations," Petitioner was to be "released under bond in the amount of $3000." *Id.* That same day, DHS also served on Petitioner a Notice to Appear in full removal proceedings under 8 U.S.C. § 1229. ECF No. 8-4. On this Notice to Appear, DHS checked the box indicating that Petitioner was "an alien present in the United States who has not been admitted or paroled." *Id.* After DHS released Petitioner on bond, Petitioner moved to Queens, New York, where he has lived for the last twelve years. Quinteros Moran Decl. ¶ 4.

On July 29, 2024, the Immigration Judge overseeing Petitioner's asylum claim denied Petitioner's application and ordered him removed to Guatemala. So Decl. ¶ 26. On August 28,

2

2024, Petitioner timely appealed this decision to the Board of Immigration Appeals ("BIA"). *Id.* ¶ 27. This appeal is currently pending. *Id.*

On August 5, 2025, NYPD arrested Petitioner for public consumption of alcohol. Aug. 5 Disposition, ECF No. 12-1, at 1. While prosecutors ultimately dismissed this charge, the August 5 arrest marked Petitioner's tenth encounter with law enforcement between January 2022 and August 2025. So Decl. ¶¶ 15–30. Following the August 5 arrest, ICE lodged a detainer against Petitioner with NYPD. *Id.* ¶ 30; Aug. 5 Detainer, ECF No. 8-6. Along with this detainer, ICE prepared a warrant for Petitioner's arrest, which authorized immigration officers to arrest and detain Petitioner "pursuant to [8 U.S.C. § 1226]." Aug. 5 Warrant, ECF No. 8-5, at 1. This warrant, however, was never executed because the NYPD declined the Aug. 5 detainer. So Decl. ¶ 30.

On November 16, 2025, masked immigration officers stopped Petitioner in Queens, New York to ask for information on an individual they were targeting for arrest. *See* Quinteros Moran Decl. ¶ 15. A different set of officers then asked Petitioner for identification and inquired into his immigration status. *Id.* Petitioner informed the officers that he was a noncitizen with a pending asylum claim. *Id.* The officers proceeded to arrest Petitioner for entering the country without legal documents. *Id.* Only after arresting Petitioner did the arresting officers learn that ICE had previously issued a detainer against him. Pardo-Figueroa Decl. ¶ 7.

Following his arrest, Petitioner was taken to 26 Federal Plaza while he awaited placement at a detention center. So Decl. ¶ 32. That same day, ICE executed an additional Form I-200 warrant for Petitioner's arrest. *See* Nov. 16 Warrant, ECF No. 8-7, at 1. On November 20, 2025,

3

ICE transferred Petitioner to Farmville Detention Center in Farmville, Virginia, where he remains today.

## II. LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees the availability of the writ of habeas corpus to every individual detained within the United States. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). Under 28 U.S.C. § 2241, Federal district courts have jurisdiction to hear and grant habeas corpus claims challenging the legality of immigration-related detention. 28 U.S.C. § 2241(a); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Petitioner bears the burden to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. PETITIONER IS ENTITLED TO A BOND HEARING

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S., 690. These protections extend to noncitizens, including those in removal proceedings. *See Id.* at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.")

The parties agree that the process Petitioner was due before the government could reimpose detention turns on which statute governs Petitioner's status. Petitioner contends that his detention is governed by § 1226(a)'s discretionary detention regime while Respondents argue that Petitioner is subject to mandatory detention under § 1225(b)(1)(B)(ii). Under 8 U.S.C. § 1225(b)(1), the Government places certain arriving noncitizens—including those that the Government deems inadmissible due to a lack of valid documentation—into expedited removal proceedings. In these proceedings, the Government orders the noncitizen "removed from the United States without

4

further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). But if a noncitizen placed in expedited removal proceedings "indicates either an intention to apply for asylum . . . or a fear of persecution," that noncitizen is referred "for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(i)–(ii). If an immigration officer determines that the individual has a credible fear of persecution, § 1225(b)(1)(B)(ii) states that "the alien shall be detained for further consideration of the application of asylum." *Id.* § 1225(b)(1)(B)(ii).

Section 1226(a) likewise empowers the Attorney General to "arrest and detain an alien pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). But unlike detention under § 1225(b)(1)(B)(ii), this detention is at the discretion of the Attorney General. "As long as the detained alien is not covered by § 1226(c), the Attorney General 'may release' the alien on 'bond . . . or conditional parole.'" *Jennings*, 138 S. Ct., at 847 (quoting 8 U.S.C. § 1226(a)). A noncitizen "detained under § 1226(a) receive[s] [a] bond hearing[] at the outset of detention." *Id.*

Petitioner is currently detained under § 1226(a). Since Petitioner's initial release on bond in 2013, the Government has exclusively invoked § 1226(a) in its dealings with Petitioner. In July 2013, after Petitioner established a credible fear of prosecution, the Government elected to release Petitioner on bond pursuant to § 1226(a). Twelve years later, when the Government attempted to issue a warrant for Petitioner's detention after his August 5 arrest, it did so pursuant to § 1226(a). The Government again invoked § 1226(a) after officers arrested Petitioner on November 16, 2025. In short, the Government has, for over twelve years, neglected any authority it may have possessed under § 1225(b) and consistently applied § 1226(a). "It cannot now turn back the clock, and neither can the Court." *Loja v. FCI Berlin, Warden*, No. 1:25-CV-386-JL-TSM, 2025 WL 3079160, at *2 (D.N.H. Nov. 4, 2025); *see also Luna Sanchez v. Bondi*, No. 1:25-CV-018888-

MSN-IDD, 2025 WL 3191922, at *4 (E.D. Va. Nov. 14, 2025) ("DHS's decision to release an individual on bond, as opposed to humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), constitutes strong evidence that DHS intended to detain the individual under § 1226(a) and not under § 1225(b).").

The Government's argument for applying § 1225(b)(1)(B)(ii) instead is unpersuasive. The Government claims that it deemed Petitioner inadmissible and placed him in expedited removal proceedings when he arrived at the border twelve years ago. The Government's argument is that Petitioner, therefore, remains subject to § 1225(b)(1)(B)(ii)'s mandatory detention requirement beyond the border. Critically, the Government argues that this designation empowers it to re-detain Petitioner at its leisure, regardless of how it has previously treated Petitioner. *See* Resp. Mem. L. Opp. Pet., ECF No. 9, at 15–16. The Government's only support for this notion is *Jennings v. Rodriguez*, which, according to the Government, "confirmed that [§ 1225(b)(1)(B)(ii)'s] statutory mandate for detention extends for the entirety of consideration of an asylum application." *Id.* (citing *Jennings*, 583 U.S., at 302). The Government reads far too much from this holding. In *Jennings*, the Supreme Court merely held that detainees under §§ 1225(b), 1226(a), and 1226(c) are not entitled to periodic bond hearings over the course of their detention. *See Jennings*, 583 U.S., at 297, 312. *Jennings* says nothing about whether the Government may release a noncitizen on bond pursuant to § 1226(a) and then, years later, without a demonstrated change of circumstances, re-detain that same individual under § 1225(b)(1)(B)(ii).[1] Further,

---

[1] At oral argument, the Government's counsel also pointed to an interim decision, *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019), to support its argument that Petitioner is detained under § 1225(b)(1)(B)(ii). Oral Arg. Tr. at 38:1–8. In *Matter of M-S-*, the Attorney General determined that "all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond." *Id.* at 519. Even assuming *arguendo* that this is the correct interpretation of the statute, the decision is silent on whether this holding applies retroactively or, as Respondent argues here, empowers DHS to re-detain previously released noncitizens without first revoking their bond. *See id.* Accordingly, this decision carries minimal persuasive value.

6

blessing the Government's novel legal theory "would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention." *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 490 (S.D.N.Y. 2025).[2]

Accordingly, Petitioner, as a noncitizen detained under § 1226(a), was entitled to an individualized bond hearing at the outset of his detention to assess danger to the community and flight risk.

Finally, this Court declines Petitioner's invitation to order his immediate release. Under § 1226, the Government retains significant discretion to revoke bond "at any time." 8 U.S.C. §1226(b). But to comply with Due Process, such discretion must "actually be exercised." *See Tumba v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025) (ordering the immediate release of a habeas petitioner where the record contained "nothing to suggest that DHS exercised any discretion at all in detaining Petitioner." (citation omitted)). The current record does not support a conclusion that the Government made an individualized determination to revoke Petitioner's bond in support of his detention. That said, the fact that ICE lodged a detainer against Petitioner after his August 5 arrest—Petitioner's tenth arrest in three years—suggests that the Government may have made such a determination, and it may have had reasonable grounds to do so. The record, however, should support such a determination. The paucity of the record counsels against any conclusive pronouncements. Instead, Petitioner will

---

[2] In several analogous settings, the Government must make a showing that revocation of an individual's release from detention is consistent with one of two primary goals: "(a) to assure that the individual will appear at the required venue at the required time (*e.g.*, for trial or for supervision by a monitoring officer), and (b) not to endanger the safety of any other person or the public." *See Villiers v. Decker*, 31 F.4th 825, 832 (2d Cir. 2022). An individual typically "cannot be summarily reassigned to . . . confinement unless a judicial officer revokes his release." *Reno v. Koray*, 515 U.S. 50, 63 (1995). The Government's position, that it is empowered to summarily re-detain an individual previously granted bond under federal law and, in essence, treat that bail determination as a nullity, is a drastic departure from these longstanding principles.

7

have an opportunity to challenge the revocation of his bond and his continued detention in a bond hearing before an Immigration Judge.

## IV. CONCLUSION

The Petition is **GRANTED IN PART**. The Government shall ensure that Petitioner receives a bond hearing before an Immigration Judge pursuant 8 U.S.C. § 1226(a) **within seven (7) business days** of this Memorandum Decision and Order. If no hearing is held by **December 24, 2025**, the Government shall immediately release Petitioner. At the hearing, the Government will bear the burden to prove, by clear and convincing evidence, the basis for the Government's individual determination to revoke Petitioner's bond and that Petitioner is a danger to the community or a flight risk.

The Clerk of Court is directed to close this case.

Dated: New York, New York
December 15, 2025

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge